**Richard S. ROBINSON and Florence H. Robinson, derivatively and on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**PENN CENTRAL COMPANY et al., Defendants.**

**Civ. A. No. 71–2840.**

United States District Court, E. D. Pennsylvania.

Dec. 3, 1971.

David Berger, Herbert B. Newberg, Leonard Barrack, Gerald Jay Rodos, Philadelphia, Pa., for plaintiffs.

Matthew J. Broderick, Norma L. Shapiro, Dechert, Price & Rhoads, Philadelphia, Pa., for defendants.

## OPINION

JOSEPH S. LORD, III, District Judge.

Plaintiffs, Richard S. Robinson and Florence H. Robinson, his wife, are owners of common stock of defendant Penn Central Company. They bring this action on their own behalf, and as representatives of a class as defined by F.R. Civ.P. 23. The class consists of all holders of the common stock of defendant company on October 21, 1971, the date of record for voting at the 1971 annual meeting of the company, originally scheduled for November 29, 1971, and adjourned to December 3, 1971. The named defendants comprise the entire present directorship of Penn Central Company.

Plaintiffs allege that on or about November 1, 1971, defendants mailed proxy statements and annual reports to the shareholders of Penn Central Company which contained untrue statements of material facts and omitted to state material facts which the reasonable shareholder of Penn Central Company would consider important in deciding how to cast his vote. They claim violations of the 1934 Securities Exchange Act, and we have jurisdiction under § 27 of the Act (15 U.S.C. § 78aa). Violations of § 10(b) (15 U.S.C. § 78j) of the Act and S.E.C. Rule 10–b–5 thereunder, as well as violations of § 14(a) (15 U.S.C. § 78n(a)) and S.E.C. Rule 14a–9 are alleged.

■ Since we have concluded that § 14(a) of the Act and S.E.C. Rule 14a–9 render the proxy statement illegal, we find it unnecessary to consider plaintiffs' other claims. There is no doubt that there is an implied private right of action for a violation of § 14(a) of the Securities Exchange Act. J. I. Case Co.

v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). That section provides that it is unlawful for any person to solicit or to permit the use of his name to solicit any proxy in contravention of rules and regulations that the S.E.C. may prescribe as necessary in the public interest or to protect investors. Rule 14a–9 of the S.E.C. promulgated under section 14 of the Act, prohibits proxy statements which contain any statement which is false or misleading with respect to any material fact, or which omits to state any material fact.

In Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), the court defined the requirement of a "material" misstatement or omission in a proxy statement necessary to establish a violation of § 14(a) and Rule 14a–9. The Court said that a finding of materiality "embodies a conclusion that the defect was of such a character that it might have been considered important by a reasonable shareholder who was in the process of deciding how to vote." 396 U.S. at 384, 90 S.Ct. at 621. The defect must not be trivial, but rather one which has a "significant propensity to affect the voting process." 396 U.S. at 384, 90 S.Ct. at 621.

The proxy statement under consideration here, dated October 25, 1971, was sent out by the management of Penn Central Company, accompanied by the 1970 Annual Report of Penn Central Company. It is a solicitation for the election of directors and for stockholder approval of a "Plan of Refinancing." It is principally with regard to the proposed "Plan of Refinancing" that plaintiffs allege that material misrepresentations or omissions were made. Recognizing "the fact that it is often easy to dissect proxy statements after the fact to reveal slight errors or insignificant omissions," Gould v. American Hawaiian Steamship Company, 331 F.Supp. 981, 999 (D.Del.1971), we nevertheless find ourselves in agreement with many of plaintiffs' contentions.

The Refinancing Plan is directed towards satisfying a debt of approximate-

ly $55,000,000 which Penn Central International N.V., a wholly-owned subsidiary of Penn Central Company, owes to various foreign lenders (hereafter referred to as "Noteholders"). These loans from the Noteholders were one-year notes which were guaranteed by the company and which matured at various dates from February 18, 1971 to April 16, 1971. On February 25, 1971, the company, International N.V., and the Noteholders entered into a temporary refinancing plan, whereby the original notes were exchanged for various extension notes, also issued by International N.V. and guaranteed by the company. These extension notes have already been extended because the annual meeting of stockholders was not held before June, 1971, and now mature on November 30, 1971.

The refinancing plan proposed for stockholder approval in the proxy by the directors and financial advisors calls for the company to deliver new long-term notes in exchange for the notes now outstanding. A principal feature of the long-term notes is the right to convert these notes into the common stock of the company. The exercise of this right would enable the noteholders to acquire an equity interest of approximately 24% of the company's common stock outstanding immediately after conversion. In the event this option is not exercised and the debt is not paid, the noteholders have the following pledges of security available: (a) 35% of the common stock of the Penn Central Transportation Company; (b) assignment of claims of International N.V. against two leased-line subsidiaries of the Transportation Company totalling $53,917,636, and (c) certain assets comprising an Operations Fund to the extent they are not used for payment of the company's expenses.

Except for earnings from sources other than this Operations Fund, no interest could be paid or would be due until June 1, 1976, though it would accrue at the rate of 10% compounded semi-annually beginning in 1971.

The maturity date for these long-term notes would be 1986. While the notes were outstanding the company and International N.V. would be subject to many restrictions, including a prohibition against declaring dividends, selling or acquiring assets, merging, issuing new shares of stock, incurring liabilities outside the ordinary course of business, or engaging in new business. Only with the approval of two-thirds of the noteholders would the company be permitted to incur new debts or encumber their assets.

It may be that a sophisticated analyst, with knowledge of the corporate world, would ultimately deduce from the proxy material that (1) virtually the only asset of the company is its ownership of Transportation Company stock; (2) Transportation Company is in reorganization; (3) no income is available from sources other than the Operating Fund; (4) therefore, interest realistically cannot be paid between now and 1976; (5) by that time, the debt would have grown from $50,000,000 to $80,000,000; (6) that bankruptcy or reorganization is potentially merely postponed; (7) that such postponement may result in a diminution in per share value below the present reorganization value. However, our concern is not the sophisticated analyst, but the reasonable stockholder and nowhere are these facts or possible consequences highlighted. We think they must be. Kohn v. American Metal Climax, Inc., 322 F.Supp. 1331 (E.D.Pa.1970); Gould v. American Hawaiian Steamship Company, 331 F. Supp. 981 (D.Del.1971). A reasonable shareholder, given such knowledge, may well conclude, as did Judge Anderson of the Second Circuit, in Matter of the New York, New Haven & Hartford Railroad Company, U.S.D.C.Conn., No. 30226 (1971), that reorganization now is preferable to "a decade and a half of probable death by attrition, with insolvency and bankruptcy at the end." If that message is in the present proxy material, it is too well encoded to be meaningful.

The proxy material informs the stockholder that the Plan is not only recommended by the present Board, but also by past members of the Board. And, in addition to seeking approval of the Plan, the proxy material also solicits votes for the "re-election" of the present Board. The recommendation by and the re-election of the Board are interwoven in their lack of revelation. The stockholder is not told (1) that the members of the past Board, who negotiated the Plan, are all defendants in a large number of lawsuits charging them with fraud against the company and breach of fiduciary duty; (2) that two of the present members of the Board, whose reelection is urged, were elected to the Board by those now defendant past directors. It is not enough to say that "various former directors and officers are defendants in approximately 35 suits." This statement serves only to invite a stockholder's guess that maybe the ones who recommended the Plan and who elected two members to the present Board are not among the "various." Beatty v. Bright, 318 F.Supp. 169 (S.D.Iowa, 1970). In addition, the material refers to the company's "financial advisers'" recommendation on page 8 without naming them as Lehman Brothers until an oblique reference on page 46 and, of course, without stating that the financial advisers are also named as defendants in much of the same litigation.

The facts must be fully and explicitly disclosed. It is not inconceivable that a stockholder would look with jaundiced eye upon a plan and proposed directors bearing such an imprimatur.

Plaintiffs have made other allegations of material misstatement or omission, but except as we have indicated in this Opinion, we find the proxy statement adequate. In holding that aspects of this proxy statement violate the Securities Act of 1934, we wish to make clear that we intimate no opinion as to the merits of the proposed Plan or the qualifications of the gentlemen proposed for election to the Board of Directors. We mean only to indicate that this Proxy statement as presently composed does not provide enough factual information for the reasonable shareholder to make informed, rational choices. Conclusory statements and bare facts without a disclosure of the key issues involved in arriving at an intelligent decision will not satisfy the requirements of § 14(a), or S.E.C. Rule 14a–9. "Too often proxies are solicited without explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought." S.Rep. No.792, 73rd Cong.2d Sess. 12; J. I. Case Co. v. Borak, 377 U.S. 426, 431, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). The foregoing shall be considered as our Findings of Fact and Conclusions of Law.