Robert **MARKEWICH**, as Trustee for Judith **Markewich**, Plaintiff,

v.

Park T. **ADIKES** et al., Defendants.

No. 75 C 1349.

United States District Court, E. D. New York.

Nov. 29, 1976.

Ira Jay Sands, New York City, for plaintiff.

Moses & Singer, New York City, for defendant Bankers Trust, BT Advisors, Inc., Sackman-Gilliland Corp.

Cahill, Gordon & Reindel, New York City, for defendant Peat, Marwick, Mitchell & Co.

Keane & Butler, New York City, for defendant BT Mortgage Investors.

White & Case, New York City, for defendant Adikes, Pfeiffer, Lawrence, Quinn, Pfeiffer, Quinn, Shaw, Upjohn & Moskin.

## MEMORANDUM AND ORDER

GEORGE C. PRATT, District Judge.

Plaintiff, alleged purchaser of "shares of beneficial interest" in BT Mortgage Investors (BTMI), bases his complaint on the charge that the defendants entered into a plan to conceal from BTMI shareholders and the investing public the true financial condition of BTMI in violation (1) of sections 10(b) and 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j & 78n, and the rules promulgated thereunder, (2) of the Martin Act, N.Y. General Business Law §§ 352 *et seq.*, and (3) of the New York common law. The defendants named in the complaint are BTMI, a real estate investment trust; the trustees of BTMI; BT Advisors, Inc., BTMI's investment advisors; various officers and directors of BT Advisors; Bankers Trust New York Corpo-

ration, the parent corporation of BT Advisors; Sackman-Gilliland Corporation, a subsidiary of Bankers Trust New York Corporation; and Peat, Marwick, Mitchell and Company, BTMI's accountants.

By motions argued June 18, 1976, the defendants seek an order pursuant to FRCP 12(b)(6) dismissing the claim brought under section 14(a). Defendant BTMI also seeks dismissal of the non-federal claims asserted against it on the ground that BTMI lacks capacity to be sued in its common name. For the reasons discussed below, the section 14(a) claim is dismissed, and BTMI's motion is denied.

## I.

Plaintiff alleges that the annual reports and financial statements of BTMI contained false or misleading statements or material omissions of fact with respect to BTMI's income from mortgage loan investments, the financial security of the investments, the criteria for selecting suitable loan candidates, and the managerial services supplied by BT Advisors. For purposes of this motion to dismiss the court assumes those allegations to be true. To establish liability under section 14(a), plaintiff advances two separate theories: (1) Since the annual reports and financial statements were "incorporated by reference" into the proxy solicitation materials, their false statements and omissions must be attributed to the proxy solicitation materials; and (2) Since the proxy solicitations failed to disclose the alleged inaccuracies of the annual reports and financial statements, they contained material misrepresentations and omissions. Consequently, and under either theory, plaintiff argues, the defendant knowingly issued or assisted in issuing false and misleading proxy solicitations which were used to secure the election of directors and the selection of auditors in violation of section 14(a) and the rules promulgated thereunder.

## II.

Under either theory of liability, plaintiff's reliance on section 14(a) is misplaced.

Section 14 protects investors in their status as shareholders by providing a cause of action for misleading proxy statements which affect the corporate voting process. In order to state a cause of action under § 14(a), a stockholder must establish that he was damaged by an infringement of corporate suffrage rights. Therefore, a plaintiff can only establish a § 14(a) claim based on a purchase or sale of securities if the purchase or sale was the result of a corporate transaction whose approval was obtained by a misleading proxy statement, e. g., a traditional merger. * * * If plaintiffs relied on a misleading proxy statement in deciding whether to purchase or sell stock independent of any corporate vote or transaction, plaintiff's remedies lie in §§ 10(b) or 18(a). *In re Penn Central Securities Litigation*, 347 F.Supp. 1327, 1342 (E.D.Pa.1972), *aff'd*, 494 F.2d 528 (C.A.3 1974).

Liability under section 14(a) and Rule 14a–9, 17 CFR § 240.14a–9, has thus been limited to situations involving either corporate mergers and acquisitions, e. g., *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976); *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374 (C.A.2 1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); and *In re Penn Central Securities Litigation, supra*, or the qualifications of directors to serve as such, e. g., *SEC v. Kalvex, Inc.*, [Current] Fed.Sec.L.Rep. (CCH) ¶ 95,226 (S.D.N.Y. 1975) (director involved in kickback scheme); *Mayer v. Development Corporation of America*, 396 F.Supp. 917 (D.Del. 1975) (directors would dishonor voting agreement); *Cooke v. Teleprompter Corp.*, 334 F.Supp. 467 (S.D.N.Y.1971) (director convicted of bribery); *Robinson v. Penn Central Co.*, 336 F.Supp. 655 (E.D.Pa.1971) (lawsuits pending against directors); and *Rafael v. Geneen* [1972–73] Fed.Sec.L.Rep. (CCH) ¶ 93,505 (E.D.Pa.1972) (lawsuits pending against directors).

Plaintiff seeks to base a violation on the possibility that had the annual reports and financial statements been more

accurate then the shareholders "would have been more fully informed of material facts concerning the abilities of the trustees and the ability of the auditor whom they were being called upon to redesignate". Plaintiff's Response Memorandum of Law at 4. What the cases clearly hold, however, is that in order to constitute a proxy violation an omission or misrepresentation of material fact must also relate to the purpose for which the proxies are solicited. As the defendants have correctly observed, "[n]o case has gone further and held that the proxy rules are violated because management has allegedly mismanaged the company, and the proxy statement does not say so." Defendants' Reply Memorandum of Law at 13. *Accord, Walner v. Friedman,* 410 F.Supp. 29 (S.D.N.Y.1975); *Epic Enterprises, Inc. v. Brothers,* 395 F.Supp. 773 (N.D.Okla.1975).

### III.

■ Even if we were to assume that section 14(a) and Rule 14a–9 might recognize such a claim, plaintiff's theories fail to state it since the proxy statements did not incorporate by reference the annual report and financial statements. Although each proxy statement mentioned the annual reports and financial statements, the language used did not incorporate them by reference into the proxy statement. Rather, the language merely indicated that BTMI had complied with Rule 14a–3(b), 17 CFR § 240.14a–3(b), which requires that each proxy statement be accompanied or preceded by an annual report to security holders.

Not only was BTMI's intention not to incorporate the annual reports and financial statement by reference evidenced by their failure to comply with the specific notice and filing requirements of 17 CFR §§ 240.-14a–6(a) and 14a–101; but common sense also dictates that there was in fact no incorporation by reference. Absent a specific declaration of incorporation, a mere mention of the annual report does not incorporate it by reference, *cf. Black's Law Dictionary* 907 (rev. 4th ed. 1968); otherwise,

an annual report would automatically be incorporated by reference in any proxy statement which ever recognized the existence of, or merely accompanies, an annual report. *Dillon v. Berg,* 326 F.Supp. 1214, 1230–31, *aff'd,* 453 F.2d 876 (C.A.3 1971).

■ Nor would the failure to correct in the proxy solicitation material the alleged inaccuracies of the annual reports and financial statements state a section 14(a) claim.

> To require the proxy materials to supplement the annual report would frustrate the purpose of Rule 14a–3(c) and nullify the terms of Rule 14a–3(b). * * * Therefore, the failure to update the annual report or to correct any false or misleading statements in the report or to supply any information omitted from the report cannot give rise to liability under section 14(a) * * *. *Dillon v. Berg, supra,* at 1231.

Assuming *arguendo* that the annual reports themselves were false and misleading, plaintiff cannot convert a section 10(b) action into a section 14(a) claim by requiring the proxy materials to correct any and all deficiencies in the annual report or financial statements. As with the incorporation by reference theory, plaintiff has failed to state a claim under section 14(a).

Accordingly, defendants' motion to dismiss that portion of the complaint asserting a claim under section 14(a) and Rule 14a–9 is granted.

### IV.

■ BTMI's motion to dismiss the non-federal claims asserted against it is denied. As an unincorporated association, BTMI's capacity to be sued in its common name is governed, pursuant to FRCP 17(b), by NY General Associations Law § 13, which permits an unincorporated association to be sued only in the name of the president or treasurer of the unincorporated association. *See In re Motor Haulage Co.,* 298 N.Y. 208, 81 N.E.2d 91 (1948). Since service was effected on the treasurer and chairman of BTMI in their individual capacities and not

their representative capacities, defendant argues, the Martin Act and common law claims against BTMI should be dismissed.

In the instant case, however, where BTMI is admittedly a proper party to the federal claim, where the chairman and treasurer of BTMI and BTMI itself have been represented by their counsel since the institution of the action, and where there has been no prejudice suffered by either the individuals or BTMI, this court sees no need to require that, at the very most, the chairman or treasurer be named and served twice in order to confer personal jurisdiction over BTMI on the non-federal claims.

SO ORDERED.