Jack N. BERKMAN and Myles P. Berkman, Plaintiffs,

v.

RUST CRAFT GREETING CARDS, INC., Robert Goldhammer, Marshall L. Berkman, John Young and Robert A. Paul, Defendants.

No. 78 Civ. 2931 (LFM).

United States District Court, S. D. New York.

July 21, 1978.

Donovan, Leisure, Newton & Irvine by Roger W. Kapp, J. Peter Coll, Jr., Margaret A. Bancroft, John E. Linville and Kevin J. Walsh, New York City, for plaintiffs.

Paul, Weiss, Rifkind, Wharton & Garrison by Jay Topkis and Richard M. Zuckerman, New York City, for defendants.

## OPINION

MacMAHON, District Judge.

Pursuant to Rule 65(a), Fed.R.Civ.P., plaintiffs move for an order granting a preliminary injunction.

This case arises out of an intra-corporate dispute among the members of the board of directors of Rust Craft Greeting Cards, Inc. ("Rust Craft"), a Delaware corporation engaged in the manufacture and sale of greeting cards and allied products. Rust Craft's shares are publicly held and traded on the American Stock Exchange. Plaintiffs, Jack Berkman and Myles Berkman, shareholders and directors of Rust Craft, sue individually and derivatively on behalf of Rust Craft. The complaint challenges the sufficiency of proxy materials sent to the Rust Craft shareholders in connection with the reelection of directors to the Rust Craft board. The individual defendants, Robert Goldhammer, Marshall Berkman, John Young and Robert Paul, are also directors of Rust Craft.

We adjudicate this motion upon the supporting and opposing affidavits and the other papers submitted since no party has requested an evidentiary hearing. See *Jacobson & Co. v. Armstrong Cork Co.*, 548 F.2d 438, 441–42 (2d Cir. 1977). The following facts appear from these papers:

During the summer of 1977, the Ziff Corporation ("Ziff") made a friendly tender offer to pay cash for all outstanding Rust Craft shares. The Rust Craft board then retained the investment banking firms of Lehman Brothers, Kuhn Loeb, Inc. ("Lehman") and Kidder, Peabody & Co., Inc. ("Kidder") to prepare and submit opinions to the board concerning a fair cash price for Rust Craft's shares. Unknown to the Rust Craft board, however, Kidder, on the day preceding its retention in the Ziff matter, had bought for its own account $750,000.00 principal amount of Rust Craft's 5¼% debentures, convertible into common stock at $25.00 per share, for a total price of $676,800.00. Kidder did not disclose the fact of its ownership of the debentures to the Rust Craft board. Rather, it accepted the assignment from the board and prepared the requested opinion.

On August 2, 1977, the Rust Craft board met to consider the opinions of the investment banking firms. Before the meeting, defendant Goldhammer gave defendant Young an SEC Form 13D reporting Kidder's purchase of the Rust Craft debentures. Young informed defendant Marshall Berkman, who in turn informed defendant Paul. These four defendants, a minority of the Rust Craft board, however never informed the other members of the board. The meeting went forward, and Kidder presented its report recommending a per share price of $24.00 to $30.00. Lehman recommended a somewhat higher price of $30.15 to $33.30.

After further negotiations, Ziff offered $26.50 per Rust Craft share and sought to consummate the transaction through some form of merger. On September 15, 1977, the Rust Craft board, subject to stockholder

approval, agreed to a proposed merger with a Ziff subsidiary through which, the proposed proxy statement explained, each Rust Craft share "will be converted into (and the holder shall be entitled to receive) $26.50 in cash."

In June 1978, defendant Young and counsel for Rust Craft were preparing proxy materials for a special meeting of the shareholders called to vote upon the proposed merger. Young mentioned the Kidder debenture purchase to counsel, who included information concerning the purchase in the draft of the proxy materials. The draft was presented to the remaining directors, and it was not until then that they learned of the Kidder debenture purchase and Kidder's attendant conflict of interest. The Rust Craft board thereafter called for an additional valuation opinion from yet another investment banker and delayed consummation of the Ziff transaction. As a result, the special meeting of the shareholders to approve the Ziff merger has not yet been held.

A meeting of the board was held on June 19, 1978 for the purpose of nominating a slate of directors for election by the shareholders. Plaintiffs moved that the four directors who knew of, but failed to disclose, the facts surrounding the Kidder conflict of interest not be renominated. The motion was defeated, and the entire slate of incumbent directors renominated by a vote of 7 to 2, plaintiffs dissenting. Proxy materials were then prepared for the regular annual meeting of shareholders, scheduled for July 25, 1978, where the election of directors would take place. Plaintiffs objected to the substance of the proxy materials, arguing that they made inadequate disclosure of the facts surrounding the defendants' failure to disclose Kidder's conflict of interest, as well as inadequate disclosure of the split board vote on the renomination question and the reasons behind the split vote. Nevertheless, the proxy materials were sent to the shareholders without this information.

Plaintiffs then brought this action for violation of Section 14(a) of the Securities Exchange Act of 1934 and Rule 14a–9(a)

thereunder, alleging that the election proxy materials are false and misleading in omitting to state:

(1) That the slate of nominees was approved over the dissent of two directors;

(2) That the stated reason for the dissent was that four of Rust Craft's directors had withheld from their fellow directors material information relating to Kidder's debenture purchase and resultant conflict of interest; and

(3) That the Kidder conflict led the board to engage a new and unquestionably independent investment banking firm to render a further opinion concerning a fair cash price for Rust Craft stock.

Plaintiffs seek to enjoin (1) further solicitation of proxies pursuant to the current proxy materials, and (2) the holding of the annual meeting until further proxy materials which are not misleading can be sent to the shareholders.

## STANDARDS FOR PRELIMINARY INJUNCTION

■ A preliminary injunction may issue upon a showing of either:

"(1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief."

*Sonesta Int'l Hotels Corp. v. Wellington Associates*, 483 F.2d 247, 250 (2d Cir. 1973) (emphasis in original). With this standard in mind, we turn to the merits and to the equities of the case.

## THE MERITS

■ The gravamen of the complaint is that the proxy materials are false and misleading in their omission of material facts, in violation of Section 14(a) and Rule 14a–9(a).

Section 14(a) provides:

"It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce

or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title."

Rule 14a–9(a), in turn, provides:

"No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading."

The elements of a private cause of action for a violation of Rule 14a–9(a) are well established. The plaintiff must demonstrate: (1) that the proxy materials contain a false or misleading statement of a material fact or omit to state a material fact necessary in order to make the statement made not false or misleading; (2) that the misstatement or omission of a material fact was the result of knowing, reckless or negligent conduct; and (3) that the proxy solicitation was an essential link in effecting the proposed corporate action. *Kennecott Copper Corp. v. Curtiss-Wright Corp.*, 449 F.Supp. 951 at 956 (S.D.N.Y.1978) (citing cases).

**A.** *Whether Defendants Omitted Material Facts Necessary in Order to Make the Proxy Materials Not False or Misleading.*

There can be no doubt that the proxy materials omit the facts concerning the Kidder debenture purchase and conflict of interest, and the split board vote on the renomination of the four individual defendants. The significant issue, however, is whether these omitted facts are material, and, if so, whether their disclosure is necessary to make the proxy materials not false or misleading.

Under *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976), an omitted fact is material if there is "a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." The first question for us is whether the omitted facts, which plaintiffs claim should have been included in the proxy materials, meet this test.

Kidder's conflict of interest affected Kidder's "credibility" and was highly relevant in assessing the firm's per share price recommendation. Every board member was entitled to have this relevant information available to him before evaluating Kidder's recommendation and acting upon the Ziff proposal in light of it. When the four individual defendants failed to disclose the existence of the conflict, they deprived their brethren of this relevant knowledge and ran the risk that the corporation would suffer as a result. This failure to disclose a known conflict of interest borders upon a breach of fiduciary duty.[1]

The shareholders, in turn, are, in all probability, entitled to know that certain candidates for reelection may well have breached their fiduciary obligations. Any reasonable shareholder would consider important the "track" record of a director whom he is asked to reelect. More likely

---

1. We find no merit in defendants' contention that they withheld information about the conflict of interest only because they deemed the conflict immaterial. Their duty as fiduciaries was to disclose the facts within their knowledge so as to permit each board member to decide for himself whether the conflict had a bearing upon the weight to be accorded Kidder's report. Moreover, the suggestion that the conflict was immaterial is belied by the entire board's prompt action, taken shortly after learning of the conflict, retaining yet another investment banking firm to render an opinion as to stock valuation.

than not, the failure to disclose a known conflict of interest would be regarded as a significant blot on such a track record, especially since the conflict centered upon the question of stock evaluation, a matter of direct importance to the shareholders. Of course, the individual defendants' failure to alert the remaining directors of the Kidder conflict may also have an adverse affect upon the shareholders' decision on the integrity and fitness of the individual defendants to hold office. See, e. g., *Rafal v. Geneen*, [1972–73 Transfer Binder] Fed.Sec. L.Rep. (CCH) ¶ 93,505 (E.D.Pa.1972); *Robinson v. Penn Central Co.*, 336 F.Supp. 655, 658 (E.D.Pa.1971). *Cf. Chris-Craft Industries, Inc. v. Independent Stock. Com.*, 354 F.Supp. 895, 914 (D.Del.1973).[2]

Likewise, the shareholders' judgment could well be influenced by the fact that two of the incumbent directors thought the defendants' failure to disclose serious enough to dissent on their fitness for renomination. *Cf. National Home Products, Inc. v. Gray*, 416 F.Supp. 1293, 1320 (D.Del. 1976). It is by no means inconceivable that a shareholder would give substantial deference to the views of the plaintiffs, long-time shareholders of the company, who considered defendants' lack of candor a major failing in office. Indeed, plaintiffs' views find support in the board's action, also omitted from the proxy materials, retaining a third investment banking firm for a valuation opinion.

In the circumstances of this case, we think it probable that the facts surrounding

the Kidder debenture purchase, the individual defendants' failure to disclose these facts, and the rift within the Rust Craft board over the renomination of the defendants, would give the shareholders pause when asked to entrust the stewardship of the company to these less than candid men. Plaintiffs have therefore demonstrated a likelihood of success on the issue of materiality.

We further think it highly probable that plaintiffs will succeed in proving that the proxy materials, as they now stand, are false or misleading. The materials convey the aura of business as usual, despite the existence of a deep schism within the ranks of management. The entire slate of directors is proffered as that of "management, " when in reality management is sharply divided over the qualifications of four of the nominees. What disclosure there is about the Kidder purchase is manifestly insufficient to apprise the shareholders of the fact that four nominees failed to advise the remainder of the board of the Kidder purchase in sufficient time to enable the board to evaluate the Kidder opinion in light of all the relevant facts. Thus, likelihood of success is demonstrated on this aspect of plaintiff's claim for relief.

B. *Whether the Omissions Were the Result of Knowing, Reckless or Negligent Conduct.*

 Under Rule 14a–9(a), plaintiffs need not demonstrate that the omissions resulted

---

**2.** The cases do not support defendants' contention that only criminal activities or diversion of corporate assets by directors are serious enough to warrant inclusion in election proxy materials. Clearly, *Rafal v. Geneen*, [1972–73 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,-505 (E.D.Pa.1972), and *Robinson v. Penn Central Co.*, 336 F.Supp. 655 (E.D.Pa.1971), required disclosure of director misfeasance which did not amount to criminal activity or diversion of corporate assets. See also *Markewich v. Adikes*, 422 F.Supp. 1144, 1146 (E.D.N.Y.1976) (citing cases).

The cases involving "sensitive foreign payments," *Levy v. Johnson*, [1976–77 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,899 (S.D.N.Y.1977), and *Limmer v. General Telephone & Electronics Corp.*, [1977–78 Transfer Binder]

Fed.Sec.L.Rep. (CCH) ¶ 96,111 (S.D.N.Y.1977), are distinguishable, arising as they did in a procedural posture significantly different from that of the case at bar. Both *Limmer* and *Levy* were damage actions, seeking to recover the amounts of foreign payments, brought after the reelection of the allegedly culpable directors. The courts held, as a matter of law, that the deficiencies in the reelection proxy materials were not the cause of the damages suffered by the corporations. These cases do not suggest that such payments were immaterial or that they should not be disclosed in future election proxy materials relating to the reelection of the payor-directors. See *United States v. Fields*, 432 F.Supp. 55 at 58–60 (S.D.N.Y.1977); *SEC v. Kalvex Inc.*, 425 F.Supp. 310 (S.D.N.Y.1975).

from knowing conduct undertaken by the director defendants with an intent to deceive. See *Gerstle v. Gamble-Skogmo, Inc.*, 478 F.2d 1281, 1298–1301 (2d Cir. 1973). It is clear, however, the director defendants stand in a fiduciary position in relation to the shareholders and owe the highest duty of absolute good faith and full disclosure. *Gerstle v. Gamble-Skogmo, Inc., supra*, 478 F.2d at 1300; *White v. Abrams*, 495 F.2d 724, 736 (9th Cir. 1974); 3 J. Pomeroy, Equity Jurisprudence § 902 at 551 (1941). Undeniably, the director defendants deliberately withheld from the shareholders the facts concerning the concealment of the Kidder conflict of interest and the resultant dissension within the board. They did so despite plaintiffs repeated efforts to have this information included in the proxy materials and despite the likelihood that such information would influence the shareholders' judgment in deciding how to vote. Moreover, the director defendants stood directly to gain by withholding the facts, since, in the absence of the facts, the shareholders would have no reason to vote against the unopposed and unsullied defendants.

Given the fiduciary relationship between the director defendants and the plaintiffs, the director defendants' self-interest in withholding the facts and their deliberate and conscious concealment of known material facts, we think it likely that an intent to deceive can be proved at the trial on the merits. See *Gerstle v. Gamble-Skogmo, Inc., supra*, 478 F.2d at 1300–01; *White v. Abrams, supra*, 495 F.2d at 735–36; Ruder, Factors Determining the Degree of Culpability Necessary for Violation of the Federal Securities Laws in Information Transmission Cases, 32 Wash. & Lee L.Rev. 571, 575–82 (1975). See also 3 J. Pomeroy, *supra*, §§ 901, 907. Certainly, these facts are sufficient to support the inference that the director defendants knew that shareholders would be misled by proxy materials drafted with less than absolute candor. *Cf. United States v. United States Gypsum Co.,* — U.S. —, — — —, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978).

■ At the very least, it is highly probable that plaintiffs will be able to show upon the trial that the director defendants were guilty of negligent conduct. Directors must discharge the duties of their position in good faith and with that degree of diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in like positions. 3 W. Fletcher, Cyclopedia of Corporations § 990 (1975). *Cf.* N.Y.Bus.Corp.Law § 717 (McKinney Supp. 1978).

The omitted facts in this case related ultimately to the crucial issue of stock value and bore directly upon the director defendants' integrity and performance in office. Certainly, reasonably prudent fiduciaries in the position of Rust Craft directors should have known that these facts were material. In the exercise of that degree of diligence, care and skill required of them, they should have laid bare the truth in the interest of complete candor and forthrightness. See *Kennecott Copper Corp. v. Curtiss-Wright Corp., supra*, 449 F.Supp. 951 at 958.

### C. Whether the Solicitation Was an "Essential Link."

There can be no doubt that the proxy solicitation was an "essential link" in electing the slate of directors. The stock holdings of board members and officers, taken together, are insufficient to constitute a quorum to elect the board. Thus, the solicitation was necessary if the proposed corporate action is to be effected. *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 385, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).

■ We therefore conclude that plaintiffs have demonstrated probable success on the merits of every element of their Rule 14a–9(a) cause of action. We next turn to an assessment of the equities.

### IRREPARABLE INJURY AND BALANCE OF HARDSHIPS

The Rust Craft shareholders are being asked to reelect directors who may well be found to have betrayed their trust and to have violated certain fiduciary duties. The

injury which may accrue to the plaintiffs and all the shareholders from the reelection of such directors is patent. Men who are likely to be proven unfit would be entrusted with important business of the company. Indeed, in view of the impending Ziff merger, these men, whom the shareholders may not wish to reelect after full disclosure, will have a hand in altering the very fiber of the company. Thus, were the election to go forward, plaintiffs and all the other shareholders would be denied their fundamental right to have their investment managed by faithful directors, duly elected after full disclosure of all the facts.

Injury of this nature is not readily remedied after the election, since it may well require our unravelling the Ziff merger, a potentially complex corporate transaction, as well as other transactions into which the company might enter. See *Sonesta Int'l Hotels Corp. v. Wellington Associates, supra*, 483 F.2d at 250: *Electronic Speciality Co. v. International Controls Corp.*, 409 F.2d 937, 947 (2d Cir. 1969). Moreover, even if we view the election in isolation, injunctive relief curing any possibility of taint is certainly preferable to the delay and expense inherent in holding a second election. *Id. Cf. Piper v. Chris-Craft Industries, Inc.*, 430 U.S. 1, 42, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977).

On the other side of the balance,[3] we perceive little hardship accruing from a relatively short delay of the election pending resolicitation. The present board will be permitted to remain in office until the shareholders can make an informed decision on the election issue. Management's ability to run the company will in no way be impaired, and all on-going operations will continue. See *Newgard v. Electro-Nucleonics, Inc.*, [1976–77 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,805 at 90,920 (S.D.N.Y.1976). Thus, the equities favor the grant of an injunction.

---

**3.** Having found a likelihood of success on the merits, as well as possible irreparable injury, we need not go on to balance the hardships. See *Sonesta Int'l Hotels Corp. v. Wellington Associates*, 483 F.2d 247, 250 (2d Cir. 1973).

## CONCLUSION

 Plaintiffs have demonstrated a likelihood of success on the merits and, *a fortiori*, have shown the existence of serious questions going to the merits. They have also demonstrated a possibility of irreparable injury and a balance of hardships in their favor. Thus, a preliminary injunction is appropriate under either leg of the *Sonesta* test.

The foregoing shall constitute our findings of fact and conclusions of law, in accordance with Rule 52(a), Fed.R.Civ.P.

Accordingly, plaintiffs' motion for a preliminary injunction is granted. Defendants are enjoined from further solicitation of proxies pursuant to the current proxy materials and from holding the annual meeting, scheduled for July 25, 1978, pending trial.

Settle form of injunction within five (5) days.

Nevertheless, we deem it well-advised to do so, in order to demonstrate that our holding finds support on either leg of the *Sonesta* test. *Cf. New York v. Nuclear Regulatory Comm'n*, 550 F.2d 745, 750 (2d Cir. 1977).