Joan WEISBERG, Plaintiff-Appellant,

v.

COASTAL STATES GAS CORPORATION, Oscar S. Wyatt, Jr., H. L. Blomquist, Jr., George L. Brundrett, Jr., Ervin O. Buck, Harold Burrow, Roy L. Gates, Charles F. Jones, J. Howard Marshall, Edward J. Mosher, Will Odom, and Fletcher L. Yarbarough, Defendants-Appellees,

and

Estate of Harry G. Fair, Warren L. Smith, Leonardo Moleiro, Robert Iglesias, Julio Iglesias, and Selman Holdings, Ltd., Defendants.

No. 215, Docket 79–7417.

United States Court of Appeals, Second Circuit.

Argued Oct. 16, 1979.

Decided Nov. 8, 1979.

---

Avrom S. Fischer, Brooklyn, N. Y., for plaintiff-appellant.

Milton S. Gould, New York City (Shea, Gould, Climenko & Casey, New York City, Michael Lesch, Richard F. Czaja, New York City, of counsel), for defendants-appellees O. S. Wyatt, Jr., H. L. Blomquist, Jr., George L. Brundrett, Jr., Harold Burrow, and Roy L. Gates.

Robert E. Walls, Houston, Tex., for defendant-appellee Coastal States Gas Corp.

Debevoise, Plimpton, Lyons & Gates, New York City (Asa Rountree, Roger E. Podesta, New York City, of counsel), for defendants-appellees Ervin O. Buck, Charles F. Jones, J. Howard Marshall II, Edward J. Mosher, Will E. Odom, and Fletcher L. Yarbarough.

Before KAUFMAN, Chief Judge, SMITH and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

Joan Weisberg appeals from a judgment of the United States District Court for the Southern District of New York, Lloyd F. MacMahon, J., dismissing the first claim for relief in her complaint against Coastal States Gas Corporation and its directors and Selman Holdings, Ltd., and its principals, all described more fully below. The basis of plaintiff's claim is that proxy statements used to solicit proxies for the election of defendant directors violated section 14(a) of the Securities Exchange Act of 1934 by failing to disclose that Coastal had paid over $8 million in alleged bribes to Selman Holdings and that the directors thereafter allegedly concealed this wrongful activity. The principal relief plaintiff seeks is an order setting aside the election of Coastal's directors and appointing a receiver pending a new election. For reasons indicated below, we hold that the district court erred in dismissing as a matter of law this portion of plaintiff's complaint.

I

Since plaintiff appeals from a dismissal, we must assume that plaintiff's allegations are true in order to test whether, as the district court found, the complaint was legally insufficient. Briefly summarized, the complaint alleges substantially the following. Defendant Coastal, which is primarily engaged in the production of petroleum products, is a publicly traded company whose stock is listed on the New York Stock Exchange. Defendant Selman Holdings is a Bermuda corporation owned jointly by defendants Leonardo Moleiro and Julio Iglesias. At relevant times: Defendant Moliero was both a director of International Marketing for Corporacion Venezolana del Petroleo (CVP), the government-owned oil company of Venezuela, and an officer of

Ven-Fuel Inc., a corporation jointly owned by CVP and International Systems Control Corp. (ISC), an American corporation. Defendant Julio Iglesias, the co-owner of Selman, was a director of Ven-Fuel and of Fuelco Ltd., another corporation jointly owned by CVP and ISC. Defendant Robert Iglesias, son of Julio Iglesias, was an employee of Coastal and an officer of Selman. The remaining named defendants were directors of Coastal elected during the years 1974 to 1978.

The complaint further alleges that between 1973 and 1974, Coastal paid over $8 million to Selman Holdings, ostensibly as brokerage commissions. These payments were the subject of hearings in October 1978 before the Subcommittee on Oversight and Investigation of the Committee on Interstate and Foreign Commerce of the House of Representatives. The record of the hearings, upon which appellant relies, indicates that Coastal made the payments in connection with purchases of oil from Ven-Fuel or Fuelco, that Moleiro and Julio Iglesias were the representatives of CVP and ISC respectively at Ven-Fuel and Fuelco, that there was no apparent justification for additional, separate payments to be made to Selman Holdings, and that the payments were far above normal commission payments on the purchase of oil. The complaint alleges that the payments were in fact bribes that were made with the knowledge of Coastal's directors. The complaint further alleges that in 1976 Coastal reported to the Securities and Exchange Commission (SEC) that Coastal had voluntarily investigated the "sensitive" payments to Selman through an Audit Committee, which had concluded, in essence, that the payments were not suspicious or unusual and that no further investigation was required. According to plaintiff, the Audit Committee report constituted a cover-up.

Following the October 1978 Congressional hearings, plaintiff filed her class action complaint in December 1978. Her first claim asserted that the proxy solicitation materials for the election of Coastal's board of directors in the years 1974–1978, inclusive, were misleading under section 14(a) of the Securities Exchange Act of 1934 because stockholders were not told of management's complicity in the payment of the so-called bribes and the subsequent cover-up by the Audit Committee. Plaintiff sought equitable relief only: setting aside of the elections, appointment of a receiver, and new elections.

In February 1979, defendant Coastal moved to dismiss plaintiff's first claim for relief. By memorandum endorsement, dated March 21, 1979, the district judge granted the motion because the claim did not "satisfy the transaction causation requirement" set forth in *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 385, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970) and other cited cases.[1] After plaintiff moved for reargument, the judge by memorandum endorsement dated May 2, 1979, adhered to his earlier decision, this time on the ground that

> Plaintiff makes no allegation that the bribes alleged in her first claim resulted in any kickbacks to the directors of Coastal . . . and thus, the decision in *United States v. Fields* [592 F.2d 638 (2d Cir. 1978)] is distinguishable.

The court entered final judgment under Rule 54(b), Fed.R.Civ.P., and this appeal followed.

## II

In 1964, the Supreme Court held that there is an implied private right of action for violation of section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a). *J. I. Case Co. v. Borak*, 377 U.S. 426 (1964). That section declares it "unlawful" to solicit proxies in contravention of the rules of the SEC, and rule 14a-9 prohibits solicitations "containing any statement which . . . is false or misleading with respect to any material fact, or which omits to state any material fact necessary in or-

---

1. The judge also dismissed plaintiff's fifth claim for relief on the ground that it sought punitive damages, which are precluded under section 28(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78bb(a). Plaintiff apparently does not appeal this determination.

der to make the statements therein not false or misleading."

Subsequently, in *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), the Court further defined the elements of a section 14(a) violation. Plaintiffs, who were shareholders of Auto-Lite, alleged that the corporation's directors had violated the statute by soliciting proxies for approval of a merger with Mergenthaler Linotype Co. without disclosing in the proxy materials that they were all nominees of, and controlled by, Mergenthaler. The Seventh Circuit Court of Appeals agreed that the proxy solicitation was misleading but nonetheless concluded that plaintiffs would not be entitled to relief under section 14(a) if defendants could show on remand "that the merger would have received a sufficient vote even if the proxy statement had not been misleading." 403 F.2d 429, 436.

The Supreme Court reversed on this issue of causation, stressing that section 14(a) embodied the legislative intention "to promote 'the full exercise of the voting rights of stockholders' by ensuring that proxies would be solicited 'with explanation to the stockholders of the real nature of the questions for which authority to cast his vote is sought.'" 396 U.S. at 381, 90 S.Ct. at 620, citing H.R.Rep.No. 1383, 73rd Cong., 2d Sess. 14. The decision of the Court of Appeals, in contrast, allowed a bypassing of the stockholders

> on the basis of a finding that the merger was fair . . . at least where the only legal challenge to the merger is a suit for retrospective relief after the meeting has been held. A judicial appraisal of the merger's merits could be substituted for the actual and informed vote of the stockholders.

396 U.S. at 381, 90 S.Ct. at 620. Concluding that it could not accept "[s]uch a frustration of the congressional policy," the Court set forth the following test of causation:

> Where the misstatement or omission in a proxy statement has been shown to be "material," as it was found to be here, that determination itself indubitably em-

bodies a conclusion that the defect was of such a character that it might have been considered important by a reasonable shareholder who was in the process of deciding how to vote. This requirement that the defect have a significant *propensity* to affect the voting process is found in the express terms of Rule 14a-9, and it adequately serves the purpose of ensuring that a cause of action cannot be established by proof of a defect so trivial, or so unrelated to the transaction for which approval is sought, that correction of the defect or imposition of liability would not further the interests protected by § 14(a).

> There is no need to supplement this requirement, as did the Court of Appeals, with a requirement of proof of whether the defect actually had a decisive effect on the voting. Where there has been a finding of materiality, a shareholder has made a sufficient showing of causal relationship between the violation and the injury for which he seeks redress if, as here, he proves that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction. This objective test will avoid the impracticalities of determining how many votes were affected, and, by resolving doubts in favor of those the statute is designed to protect, will effectuate the congressional policy of ensuring that *the shareholders are able to make an informed choice when they are consulted on corporate transactions.*

Id. at 384–85, 90 S.Ct. at 621 (footnotes omitted).

The *Mills* Court thus stressed that a shareholder is entitled to redress under section 14(a) if shareholder approval was necessary for the challenged transaction and if the proxy solicitation was materially false or misleading. The Court subsequently clarified the second prong of the *Mills* test in *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976), by defining an omission as material if there was "a substantial like-

lihood that a reasonable shareholder would consider it important in deciding how to vote."

## III

■ Appellant argues that the district court erred in holding in its first memorandum opinion that her complaint failed "to satisfy the transaction causation requirement of *Mills* . . . ."[2] Appellees, in contrast, urge that we affirm the dismissal on this ground, asserting that "where the transaction authorized by the allegedly false or misleading proxy materials is the election of directors, previous improper corporate payments (as breaches of fiduciary duty) are not approved by shareholders voting for directors, and thus are not caused by the proxy statements." This argument, however, misconstrues plaintiff's claim. In the cases relied on by appellees,[3] the plaintiff sought damages because of allegedly improper payments, which did not require shareholder approval. The causal link between the proxy solicitation for the election of directors and the injury complained of—the improper payments—was attenuated at best. In the instant case, however, the challenged "transaction" is the election of the directors, and we have no doubt that the "proxy solicitation itself . . . was an essential link in the accomplishment" of that transaction, within the meaning of *Mills*. See also *Berkman v. Rust Craft Greeting Cards, Inc.*, 454 F.Supp. 787, 793 (S.D.N.Y.1978).

Indeed, the district judge's opinion after reargument apparently recognized the force of plaintiff's assertion that her complaint met the "transaction causation" requirement. In his second memorandum, the judge affirmed his dismissal of the first claim, but this time on the ground that plaintiff failed to assert that the alleged bribes resulted in kickbacks to the directors, citing our recent opinion in *United States v. Fields*, 592 F.2d 638 (2d Cir. 1978). This new rationale, by implying that an allegation of kickbacks would have changed the result, raises the much more difficult question of whether the alleged omissions were "material." As previously noted, the Supreme Court in *Mills* emphasized that a defect in the proxy statement would not violate section 14(a) if it was "trivial" or lacked "a significant *propensity* to affect the voting process." 396 U.S. at 384, 90 S.Ct. at 621. This requirement of materiality, as defined in *TSC Industries v. Northway*, supra, required the district court in the instant case to consider whether a reasonable shareholder would find information concerning the alleged bribes and cover-up to be important in deciding how to vote on the election of directors.

Utilizing this test of materiality, we believe that it was error to dismiss plaintiff's first claim for relief on a motion to dismiss without first providing plaintiff with some opportunity to demonstrate that the alleged omissions were material. It may be, as the district court apparently held, that a director's approval of questionable payments is not material to the decision whether to re-elect him unless he received a kickback. Nevertheless, even if a distinction between "mere" bribes and bribes coupled with kickbacks makes sense (a question we need not reach), appellant had a right to some discovery or other opportunity to develop a factual record before such a materiality question was decided. See *TSC Industries v. Northway*, supra, 426 U.S. at 450, 91 S.Ct. 2126. Plaintiff alleges that had she been provided with such an opportunity, she would have been able to establish the materiality of the alleged bribes by proving kickbacks. We cannot say as a matter of law

---

**2.** The term "transaction causation" was apparently first used in this court by Judge Oakes in *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374 (2d Cir. 1974), cert. denied, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975).

**3.** E. g., *Herman v. Beretta* [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,574 (S.D.N.Y. 1978) (plaintiffs sought damages and voiding of

elections; latter request held moot since term of directors had already expired); *Limmer v. General Telephone and Electronics Corp.*, [1977–78 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,111 (S.D.N.Y.1977); *Levy v. Johnson*, [1976–77 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 95,899 (S.D.N.Y.1977).

that such an attempt would have been futile, particularly in light of the massive and unexplained overpayments by Coastal to Selman revealed in the hearings of the House Subcommittee on Oversight and Investigation. Furthermore, plaintiff's allegation of a cover-up of the alleged bribes enhances the prospect that she will succeed in demonstrating materiality, since we believe that shareholders, in deciding which directors to elect, would consider such conduct, if it occurred, more important than the initial authorization of the payments.[4] Finally, plaintiff claims that if permitted to amend her complaint, she could make a formal allegation of kickbacks to the directors. Plaintiff should be given an opportunity to do so, since the case must be remanded in any event.

■ Appellees argue that a reversal here presages the expansion of the section 14(a) action to encompass myriad allegations of corporate waste that have traditionally been the concern of state courts. We recognized this obvious danger in our recent opinion in *Maldonado v. Flynn*, 597 F.2d 789 (2d Cir. 1979), where we rejected any attempt to use section 14(a) in such a manner. However, as we noted in *Maldonado*, shareholders are entitled under the statute to truthful presentation of factual information concerning the honesty of directors in their dealings with the corporation. Id. at 796. Because plaintiff's allegations of a cover-up of massive bribes and of kickbacks to the directors, if true, would be material to the shareholders in deciding whether to re-elect directors, we conclude that plaintiff's complaint was prematurely dismissed.[5]

Accordingly, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

---

4. Plaintiff asserts that the allegation of a cover-up is particularly significant since many corporations have voluntarily disclosed questionable payments, so that in elections of directors thereafter shareholders were not deprived of such information.

5. Since we conclude only that the trial court should not have dismissed plaintiff's complaint without further development of a record, we need not consider whether any of the claims against individual directors are now moot. See *Maldonado v. Flynn, supra,* 597 F.2d at 797 n. 10.