George ROSENBAUM, Renee Shenkin, and Carol Wheeler, on behalf of themselves and all others similarly situated and, derivatively, on behalf of Commonwealth Realty Trust, Plaintiffs,

v.

Julius KLEIN, I. H. Krekstein, Shepard Broad, Edward B. Stokes, Bart J. Axelrod, Michael H. Krekstein, Krekstein, Shapiro, Bressler & Wolfson, Defendants,

and

Commonwealth Realty Trust, Nominal Defendant.

Civ. A. No. 81-4844.

United States District Court, E. D. Pennsylvania.

Sept. 13, 1982.

Steven M. Kramer, Michael R. Needle, Philadelphia, Pa., for plaintiffs.

H. Robert Fiebach, David M. Doret, Marvin Katz, Alan C. Kessler & Catherine Votaw, Philadelphia, Pa., for defendants.

## OPINION

LOUIS H. POLLAK, District Judge.

This is an action by former and present shareholders of Commonwealth Realty Trust ("CRT") against a group of former and present trustees and officers of CRT. Plaintiffs seek compensatory and punitive damages, costs, and attorneys' fees. The complaint contains both direct and derivative claims which allege violations of the

federal securities laws; the complaint also contains pendent state law claims of breach of fiduciary duty, corporate mismanagement, and fraud. Pursuant to Fed.R.Civ.P. 12(b), defendants have moved to dismiss (a) the federal claims for failure to state a cause of action under the federal securities laws, and (b) the pendent claims because the federal claims to which they are attached are insubstantial.

## I.

CRT is a real estate investment trust organized under Pennsylvania law. Its assets (principally commercial real estate) are administered by a board of trustees for the benefit of holders of certificates of beneficial interest ("shares"). CRT shares are traded on the over-the-counter market. The gravamen of the complaint is an alleged conspiracy by defendants to sell their large holdings of CRT shares to a British real estate investment concern, Country & New Town Properties Ltd. ("Properties Ltd.") in November 1980 at a significant above-market profit. Plaintiffs contend that this transaction constitutes a breach of the CRT trustees' fiduciary obligation to CRT shareholders because they sold their controlling interest at a premium without considering the interests of the trust or the other shareholders. Plaintiffs also allege proxy violations under section 14 of the Securities Exchange Act of 1934 ("1934 Act") based on defendants' failure to disclose the nature of their relationship with Properties Ltd. in proxy solicitations issued for the election of trustees.

In the early 1970s defendants Klein and Krekstein and members of their families held a controlling interest in CRT class A shares. This control enabled them to maintain their positions as members of the five-person board of trustees and as CRT officers and also to appoint their associates Broad and Stokes as additional trustees.

Through business contacts with Krekstein, Properties Ltd. became interested in investing in CRT. Pursuant to a private placement floated in September 1974, Properties Ltd. and another firm, Brimicon, purchased two newly issued classes of CRT shares, classes B and C. They also obtained certain rights: (1) a right to elect through their holdings two trustees; (2) a right to veto the issuance of more than 100,000 new class A shares in a single year in order to prevent the dilution of their interest; (3) a right to convert class B and C shares into class A shares at their option; and (4) a right of first refusal on the disposition of Klein's and Krekstein's class A shares.

Properties Ltd. and Brimicon subsequently increased their class B and C holdings by purchases in the market. Then Brimicon, pursuant to a corporate reorganization, assigned its shares to Properties Ltd. By early 1980, Properties Ltd. held approximately 42% of all outstanding CRT shares. The only other major block of shares was the Klein and Krekstein interest in class A shares. Properties Ltd. also began to purchase class A shares in the market as part of its plan to take over CRT.

During the late 1970s, CRT's financial position had begun to deteriorate and its dividends to shareholders were declining. By early 1980 it seemed clear that Klein's and Krekstein's efforts to obtain new capital without letting Properties Ltd. take over CRT were unlikely to succeed, in part because Properties Ltd. planned to veto any issuance of greater than 100,000 new class A shares and also because the market did not appear willing to absorb such a large CRT offering. According to plaintiffs' allegations, Klein and Krekstein therefore began to reconsider the possibility of selling their controlling interest to Properties Ltd. At this point, Properties Ltd. made a formal offer to buy $4 million worth of new class A shares in order to obtain control. CRT's board of trustees rejected the offer.

In April of 1980, prior to the May annual shareholders' meeting, a proxy solicitation was distributed to CRT shareholders seeking their votes on the election or reelection of the trustees (including Klein and Krekstein). This solicitation was clearly governed by section 14(a) of the 1934 Act and the Securities Exchange Commission ("SEC") rules promulgated pursuant there-

to establishing various disclosure requirements for proxy materials. According to plaintiffs' allegations, these proxy materials failed to disclose fully the nature of Klein's and Krekstein's potentially self-interested dealings with Properties Ltd. and the precise nature of the 1974 private placement and right of first refusal agreement. The self-dealing character of these transactions was, in plaintiffs' view, a material fact that should have been disclosed to shareholders when they were asked to elect these trustees.

In November 1980, after the election, Klein and Krekstein agreed to sell their class A shares to Properties Ltd. for $12.75 per share. The deal was closed in January 1981. During the spring of 1981, Properties Ltd. used its controlling interest to replace CRT management with its own appointments and to place British trustees on the board.

Although plaintiffs' complaint is framed in eleven counts, only three principal issues require discussion: plaintiffs' direct and derivative claims under section 14 of the 1934 Act, plaintiffs' direct and derivative claims under section 13(d) of the 1934 Act, and plaintiffs' pendent state law claims.

## II.

Plaintiffs allege that defendants violated section 14(a) by failing to disclose the self-dealing connection between Properties Ltd. and the CRT trustees in the April-May 1980 election proxy solicitation. On the basis of that asserted violation, plaintiffs seek monetary damages for the November 1980 sale of control by Klein and Krekstein to Properties Ltd. Count I charges defendants with material misrepresentations and omissions concerning CRT's financial condition and the Klein-Krekstein interest in Properties Ltd.'s takeover bid which undermined the shareholders' ability to judge the trustees' qualifications for office and therefore improperly skewed the election. Plaintiffs do not, however, seek to set aside the election.

Defendants have moved to dismiss, contending that plaintiffs' complaint fails to allege a proper basis for seeking monetary damages under section 14(a). In particular, defendants argue that plaintiffs have failed to satisfy the Supreme Court's causation requirement for section 14(a) liability. According to defendants, the April 1980 proxy materials, even assuming they contained misleading information or material omissions, only sought shareholder approval of the May 1980 trustee election; they had nothing to do with the ultimate November 1980 transaction for which plaintiffs seek damages. Thus, plaintiffs may well have stated a proper state law claim for breach of trust in the November 1980 sale of control, but the proxy violation is not causally linked to that transaction and therefore liability for the November transaction may not be predicated on the April 1980 proxy violations. Plaintiffs have responded by contending that the May 1980 election based on the misleading proxies must be seen as a "but for" cause of the November self-dealing transaction because, had the shareholders been properly informed of Klein's and Krekstein's activities in April 1980, these trustees never would have been reelected and therefore would have been unable to approve the November deal.

Section 14(a) of the 1934 Act provides:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

15 U.S.C.A. § 78n(a). In 1964, the Supreme Court held that a shareholder who had received a proxy had an implied private cause of action under section 14(a). *J. I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1556, 12 L.Ed.2d 423 (1964). The Court noted that the principal purpose of section 14(a) was

"to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation," 377 U.S. at 431, and therefore an implied cause of action was an appropriate device to police such solicitations. Since *Borak,* the Court has set forth the two principal elements of a section 14(a) claim. First, in *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 385, 90 S.Ct. 616, 622, 24 L.Ed.2d 593 (1970), the Court held that a plaintiff must prove causation because the proxy solicitation must be "an essential link in the accomplishment of the transaction" giving rise to the litigation. Second, in *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976), the Court defined the materiality requirement, noting that a proxy violation claim asserts a *material* omission or misrepresentation if there was "a substantial likelihood that a reasonable shareholder would consider [the omitted or misrepresented fact] important in deciding how to vote." *See generally Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374, 381–82 (2d Cir. 1974) (discussing causation and materiality elements of section 14(a) claims), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975).

Defendants argue, citing the *Mills* causation requirement, that plaintiffs must show more than a false solicitation leading to the *election* of trustees who later approved a challenged transaction; rather, they must show that the false proxy materials were directly linked to the challenged transaction. Because the November 1980 transaction did not require shareholder approval and because the April 1980 proxies related only to the May *election,* defendants argue that the alleged proxy violations played too indirect a role in the transaction for which plaintiffs seek damages to support section 14(a) liability. They cite a series of cases holding that a section 14(a) claim must assert that a challenged transaction was the subject of a proxy solicitation and was approved on the basis of false proxy materials. *See, e.g., Issen v. GSC Enterprises, Inc.,* 522 F.Supp. 390, 396 (N.D.Ill.1981); *Zilker v. Klein,* 510 F.Supp. 1070, 1074 (N.D.

Ill.1981); *Rosengarten v. ITT Corp.,* 466 F.Supp. 817, 827–28 (S.D.N.Y.1979).

In response, plaintiffs rely primarily on a recent case from the Ninth Circuit, *Gaines v. Haughton,* 645 F.2d 761 (9th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982), which they assert draws a distinction between the failure to disclose mere corporate misconduct, which would not be "material" under the *TSC* standard, and self-dealing, which is "material" under *TSC,* in an election context. This asserted distinction forms the basis of plaintiffs' argument that because their complaint alleges a failure to disclose self-dealing in an election proxy, the causation requirement is met.

Plaintiffs have misread *Gaines.* In *Gaines,* the plaintiff alleged that corporate directors had violated section 14(a) by failing to disclose illegal foreign payments in proxies issued to solicit their election. Plaintiff sought injunctive relief preventing further illegal payments and injunctive relief setting aside the elections. Defendant moved to dismiss the section 14(a) claims.

The court ruled, first, that the district court had properly dismissed the claim seeking to enjoin further illegal payments (i.e., the claim relating to corporate misconduct *per se* ) because of its failure to satisfy the *Mills* causation requirement. The court noted that the "transactional causation" requirement is only satisfied where plaintiffs' claims relate to the nondisclosure of information in proxy materials that were distributed to obtain shareholder approval of the challenged transaction (e.g., the illegal foreign payments). 645 F.2d at 775. Therefore, the 14(a) claim relating only to corporate misconduct (the illegal payments) that did not require shareholder approval was properly dismissed for lack of causation. The court did not reach the materiality issue with respect to this claim. 645 F.2d at 776.

Second, the court addressed the 14(a) claim seeking to set aside the elections. Here the court found the causation requirement satisfied because plaintiff's challenge

to the election related directly to the false proxy materials used in the election. 645 F.2d at 776. The court then turned to the second part of 14(a) analysis: the materiality issue. It held that plaintiff's claims relating to the election itself also were properly dismissed. Dismissal was proper because failure to disclose the illegal payments did not constitute a "material" omission in the election context. Within this materiality analysis, the court discussed the mere misconduct/self-dealing distinction relied on by plaintiffs. The court noted that had the nondisclosures in the election proxy materials related to self-dealing by the directors seeking election, such omissions clearly would have been "material." 645 F.2d at 776–77. Self-dealing is material in the election context, according to the court, because it sheds light on a director's "[fitness] for corporate stewardship." 645 F.2d at 779. Corporate directors' decisions that arguably constitute misconduct, however, are not material in the proxy area because those kinds of misconduct can be policed by state law fraud and fiduciary causes of action.

■ The difficulty created by plaintiffs' reliance on *Gaines* is that the *Gaines* court never applied the misconduct/self-dealing distinction to the *causation* requirement. The question plaintiffs assert that *Gaines* resolves is in fact left open: can plaintiffs who seek damages for a self-dealing transaction consummated subsequent to an election but who do not attack the election itself satisfy the *Mills* causation requirement when the allegedly misleading proxy relates only to the election and does not relate to the transaction?

The misconduct/self-dealing distinction, although appropriate in the materiality realm, is not applicable in the causation area. The two standards—causation and materiality—serve different purposes and encompass different concerns. Materiality relates to the character of the information that was suppressed or distorted and considers how that information affects a particular shareholder decision. Thus, where an election is challenged, the self-dealing of those facing election is clearly material to the shareholder decision. The causation standard, by contrast, ensures that there be some relationship between the proxy violation and the asserted injury. If an injury arises from a transaction unrelated to the proxy materials, it makes little sense to use the proxy rules to police that transaction because by hypothesis even perfect information in the proxy materials could not have prevented or modified the challenged transaction. Other devices, such as state law remedies for fraud and breach of fiduciary duty, are available to challenge the transaction without bringing the federal securities laws into play. The proxy rules ensure that particular shareholder decisions made on the basis of proxy solicitations are fair and accurate and grounded on complete information. Any decision not so grounded could be challenged and overturned pursuant to section 14(a). But to use those rules to scrutinize other corporate transgressions that do not depend directly on the proxy mechanism distorts the purpose of section 14(a) as articulated by the Court in *Borak*.

Further support for this view may be found in *Weisberg v. Coastal States Gas Corp.*, 609 F.2d 650, 654–55 (2d Cir. 1979), *cert. denied*, 445 U.S. 951, 100 S.Ct. 1600, 63 L.Ed.2d 786 (1980), and *Maldonado v. Flynn*, 597 F.2d 789, 795–98 (2d Cir. 1979). Both of these cases are cited in *Gaines*, and both are relied on, inaptly, by plaintiffs. In *Weisberg* and *Maldonado*, the Second Circuit applied the misconduct/self-dealing distinction in the materiality context, but approved of dismissals for lack of causation where there was no "essential link" between the proxy solicitation and the challenged transaction.

Thus, assuming that plaintiffs' allegations concerning defendants' violations of the proxy rules are accurate, any such violation was not the cause, for purposes of 14(a) analysis, of the November 1980 sale of the controlling interest in CRT. Accordingly, plaintiffs' 14(a) claims are dismissed.

### III.

■ Plaintiffs also have alleged that defendants violated section 13(d) of the 1934

Act by failing to file disclosure reports required by that section. Plaintiffs seek monetary damages. Defendants have moved to dismiss, contending that no implied private right of action for damages exists under section 13(d).

Section 13(d) requires any "group" holding more than 5% of the outstanding stock of a company to file disclosure reports with the SEC setting forth the reasons for the group's accumulation of a 5% interest and stating whether the group plans to attempt a takeover. 15 U.S.C.A. § 78m(d). Thus, the principal purpose of section 13(d) is to alert the marketplace to any large, rapid accumulation of securities that might lead to a shift in corporate control. See *GAF Corp. v. Milstein,* 453 F.2d 709, 717 (2d Cir. 1971), *cert. denied,* 406 U.S. 910, 92 S.Ct. 1610, 31 L.Ed.2d 821 (1972). Plaintiffs claim that Klein and Krekstein constituted such a group and that they failed to file the required reports disclosing their negotiations with Properties Ltd. and the impending sale of control of CRT.

Section 18 of the 1934 Act provides that purchasers and sellers of securities who have knowledge of and rely upon any report filed pursuant to the securities laws that contains misrepresentations may seek monetary damages. *See Stromfeld v. Great Atlantic & Pacific Tea Co.,* 484 F.Supp. 1264, 1268 (S.D.N.Y.), *aff'd mem.,* 646 F.2d 563 (2d Cir. 1980); *Myers v. American Leisure Time Enterprises, Inc.,* 402 F.Supp. 213, 214–15 (S.D.N.Y.1975), *aff'd mem.,* 538 F.2d 312 (2d Cir. 1976). A failure to file, however, does not provide a basis for a claim under section 18. *Stromfeld* at 1269.

To read into section 13(d) a cause of action for damages by shareholders who do not allege detrimental reliance as purchasers or sellers on misrepresentations in reports filed, but simply a failure to file required reports, would be to authorize an end-run around section 18. For the reasons adduced by Judge Weinfeld in *Myers,* 402 F.Supp. at 214–15, a decision which in turn

relies in some measure on the Third Circuit's rejection of a similar contention under section 13(a), *In re Penn Central Securities Litigation,* 494 F.2d 528, 539–40 (3d Cir. 1974), the invitation to expand section 13(d) in the manner proposed is declined.[1]

### IV.

■ Defendants have moved to dismiss plaintiffs' derivative claims for failure to allege a demand on the corporate directors as required by Fed.R.Civ.P. 23.1. *See Waldman v. Carey,* 82 F.R.D. 469, 471 (E.D. Pa.1979). Although plaintiffs respond that a demand would have been futile and therefore need not be alleged, plaintiffs have failed to set forth with particularity the basis for their claim of futility. Amending the complaint, however, would be fruitless. The legal analysis relevant to the derivative federal claims is identical to that pertaining to the direct federal claims. The derivative federal claims, therefore, are also dismissed.

### V.

■ Plaintiffs have asserted several pendent state law claims against the defendants. The exercise of pendent jurisdiction is a discretionary matter. As a general rule, "if the federal claims are dismissed before trial ... the state claims should be dismissed as well." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *cf. Rosado v. Wyman,* 397 U.S. 397, 402–05, 90 S.Ct. 1207, 1212–14, 25 L.Ed.2d 442 (1970). In this Circuit, in the absence of " 'exceptional circumstances,' " it is an abuse of discretion for a district court not to dismiss the pendent state claims where the federal claims are dismissed on the pleadings. *Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187, 196 (3d Cir. 1976); *cf. Kavit v. A. L. Stamm & Co.,* 491 F.2d 1176, 1180 (2d Cir. 1974); *see Rogin v. Bensalem Township,* 616 F.2d 680, 697 (3d Cir. 1980); *Merritt v. Colonial Foods, Inc.,* 499 F.Supp. 910, 916 (D.Del. 1980).

**1.** By contrast, there is strong authority that section 13(d) will ground a suit for injunctive relief against the filing of false or misleading reports. *GAF Corp. v. Milstein,* 453 F.2d at 719–21 & nn.21–22; *Myers, supra.*

Nothing of which this court is aware suggests that "exceptional circumstances" are present here. However, inasmuch as the parties have not addressed this question in the submissions now before the court, plaintiffs will be allowed ten days from the date of this opinion and order to submit a memorandum undertaking to demonstrate that this case is in fact "exceptional" in the sense contemplated by our Court of Appeals in *Tully, supra,* and defendants will then have one week in which to respond.

### ORDER

For the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. Plaintiffs will be permitted ten days from the date of this opinion to brief the issue whether they will be left without a remedy in state court should their state claims be dismissed by this court;

2. Defendants will be permitted one week to respond to plaintiffs' brief.

3. In all other respects, defendants' motion to dismiss plaintiffs' amended complaint is GRANTED.