**Charlotte HOROWITZ**

v.

**Thomas G. POWNALL, et al.**

**Civ. No. Y–82–3011.**

United States District Court,
D. Maryland.

July 2, 1985.

See also, D.C., 105 F.R.D. 615.

John B. Isbister, Baltimore, Md., and Sheldon D. Camhy, New York City, for plaintiff.

George Beall, Baltimore, Md., and Robert C. Myers, New York City, for defendants.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

Presently before the Court is the defendants' motion for summary judgment. The facts of this case have been set out in previous opinions of this Court relating to other aspects of this case and need not be restated.

By Memorandum and Order dated July 1, 1985, plaintiff's first and second claims were dismissed because there was no longer any case or controversy as to those claims. Thus, defendants' motion for summary judgment will be considered only as it relates to the plaintiff's third claim which seeks relief against the re-election of management and the adoption of a "supermajority" provision at the April 28, 1983 annual meeting alleging that the proxy statement contained material omissions and misrepresentations about the Standstill Agreement.

■ Plaintiff concedes that her claim is moot with respect to the election of the board of directors because the election challenged in the Complaint has been superseded by subsequent elections. However, the proxy statement submitted by management in connection with the April 28, 1983 shareholders meeting also sought approval of an amendment to Martin Marietta's articles of incorporation which would require a "supermajority" approval of certain mergers and consolidations. That amendment was approved at that meeting and remains in the articles of incorporation. Therefore, plaintiff's claims is not moot insofar as it relates to that amendment.

■ Defendants seek summary judgment on this claim, contending that the alleged omissions from the April, 1983 proxy statement were not material and that the allegedly omitted information was widely disseminated in other Martin Marietta SEC filings and in the press. Because it is clear as a matter of law that the omissions which plaintiff alleges could not have been material to a vote on the "supermajority" provisions, defendants' motion will be granted and summary judgment will be entered in defendants' favor on the third claim.

Plaintiff has alleged that shareholders voting on the "supermajority" provision did not know (1) that the Standstill Agreement was acquired by the director defendants in exchange for valuable consideration of Martin Marietta, (2) that in exchanging Bendix shares acquired by Martin Marietta, the director defendants rejected offers by Bendix and Allied which would have resulted in the shareholders receiving a premium, (3) that suits had been filed challenging the directors' actions, and (4) that the Standstill Agreement had been modified on September 21, 1982.*

Plaintiff does not allege any misstatement or omission with respect to the charter amendment providing for the "supermajority" provisions. The proposed charter amendment and its effect were described at length in the proxy statement and a copy of the full text of the amendment was attached to it.

■ To violate the proxy rules, a proxy statement must make a material misrepresentation or omission relevant to some matter for which corporate authorization is being sought. The Supreme Court in *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976), set the standard for materiality under Rule 14a–9:

An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote....what the standard does contemplate is a showing

---

* The September 21, 1982 modification provided that Allied's holdings in Martin Marietta would be voted in proportion to the vote of other Martin shareholders, if that action was ordered by a court. The Agreement originally provided that Allied's holdings would be voted according to the direction of management.

of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder.

To recover in this action, therefore, plaintiff must show that shareholders were "deprived of information necessary to evaluate and act upon" the supermajority proposals. *Dan River, Inc. v. Icahn,* 701 F.2d 278, 286 (4th Cir.1983). None of the omissions alleged by the plaintiff were in any way related to the vote on the proposed supermajority provisions. The Standstill Agreement was not before the shareholders for a vote, nor were the terms of the stock swap with Allied. It is inconceivable that information relating to those matters, or to pending litigation regarding those matters, would have assumed significance in the minds of reasonable shareholders deciding how to vote on the charter amendment. As the Supreme Court noted in *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 384, 90 S.Ct. 616, 621, 24 L.Ed.2d 593 (1970):

> [The] requirement that the defect have a significant *propensity* to affect the voting process is found in the express terms of Rule 14a–9, and it adequately serves the purpose of ensuring that a cause of action cannot be established by proof of a defect so trivial, or *so unrelated to the transaction for which approval is sought,* that correction of the defect or imposition of liability would not further the interests protected by § 14(a). [emphasis added]

Here, the interests protected by § 14(a) are adequately furthered by the full and complete disclosure of all information directly relating to the charter amendment. The fact that all the details of completely unrelated transactions were not disclosed in the proxy statement does not indicate a violation of § 14(a) or Rule 14a–9.

Plaintiff suggests that the information relating to the Standstill Agreement, the stock transaction with Allied, and the pending litigation was material because it was important to the issue of management competence and integrity. Under this reasoning, any controversial action by management would automatically become relevant to any other corporate action and would require that every proxy statement concerning any proposed corporate action would have to disclose all details of every action undertaken by management, especially if that action had been challenged by one or more shareholders. The fact that some shareholders did not agree with management's handling of the Allied transactions or the Standstill Agreement does not make every detail of those transactions material to a determination of a totally unrelated issue.

The cases plaintiff cites in support of her theory are not to the contrary. Facts relating to directors' self-dealing or pending litigation against the corporation or its directors may be material to the issue of whether to re-elect those directors, *see, e.g., Gaines v. Haughton,* 645 F.2d 761 (9th Cir.1981), *cert. denied,* 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982); *Maldonado v. Flynn,* 597 F.2d 789 (2d Cir.1979); *Weisberg v. Coastal States Gas Corp.,* 609 F.2d 650 (2d Cir.1979), *cert. denied,* 445 U.S. 951, 100 S.Ct. 1600, 63 L.Ed.2d 786 (1980); or to the issue of whether to buy or tender shares, *see, e.g., Berman v. Gerber Products Co.,* 454 F.Supp. 1310, 1322 (W.D. Mich.1978) (disclosure of alleged improper foreign payments by tender offeror important in tender offer context). In this case, the amendment for which approval was sought concerned the requirements for future merger or acquisition proposals. A reasonable shareholder was capable of fully evaluating that proposal on the basis of the information presented concerning the charter amendment. The decision to follow management's recommendation was reasonably based on an evaluation of the proposal itself, and did not depend on an independent evaluation of the steps management had taken in dealing with the Allied-Bendix proposals in the preceding year. The omissions alleged by plaintiff were clearly immaterial to a vote on the supermajority provisions. Summary judgment

in favor of the defendants is therefore appropriate.

The Court would also note that the omissions of which plaintiff complains were widely disclosed elsewhere, in the press and in Martin Marietta's SEC filings. Plaintiff complains that a reasonable shareholder should not be required to send for SEC filings and do independent research in the press.

The only conceivable relevance of the omitted information to which plaintiff can point, however, is its relevance to the competence and integrity of management. Certainly, without doing any independent research, a reasonable shareholder would be aware that the actions of management in the handling of the Allied-Bendix matter had been the subject of intense scrutiny for months. In *Seibert v. Sperry Rand Corp.*, 586 F.2d 949, 952 (2d Cir.1978), the court noted that where information concerning a company's labor problems was widely available in the national media, there was no duty to disclose that information to shareholders voting in a board of directors election. "Although the underlying philosophy of federal securities regulation is that of full disclosure, [citation omitted], 'there is no duty to disclose information to one who reasonably should already be aware of it' ... As the district court held, any reasonable shareholder who was not already familiar with Stevens' labor problems had this information reasonably available to him." *See also Frigitemp Corp. v. Financial Dynamics Fund, Inc.*, 524 F.2d 275, 282 (2d Cir.1975) (a reasonable belief that the other party already has access to the facts should excuse a defendant from disclosure which reasonably appear to be repetitive).

In this situation, any reasonable shareholder should have been aware that questions had been raised concerning management's handling of the Allied-Bendix proposals, the Standstill Agreement, and other issues. A holding that such information was material to a vote on the supermajority provisions, and this Court has found that it was not, would not create a duty to disclose the details of the Standstill Agreement and the stock trade with Allied because that information was widely available to all shareholders through other means.

Defendants' motion for summary judgment is therefore granted with respect to the third claim of plaintiff's Amended Complaint.