*Rubenstein v. Adamany*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by federal rule of appellate procedure 32.1 and this court's local rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the federal appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of September, two thousand twenty-three.

PRESENT:
> JON O. NEWMAN,
> JOSÉ A. CABRANES,
> MARIA ARAÚJO KAHN,
> *Circuit Judges.*

_____

STANLEY RUBENSTEIN, Derivatively on Behalf of Nominal Defendant JEFFERIES FINANCIAL GROUP INC.,

*Plaintiff-Appellant*,

v.                                                                                              22-2794

LINDA L. ADAMANY, BARRY J. ALPERIN, ROBERT D. BEYER, FRANCISCO L. BORGES, W. PATRICK CAMPBELL, PAUL M. DOUGAN, BRIAN P. FRIEDMAN, MARYANNE GILMARTIN, RICHARD B. HANDLER, ALAN J. HIRSCHFIELD, JAMES E.

JORDAN, ROBERT E. JOYAL, JACOB M. KATZ, JEFFREY C. KEIL, MICHAEL T. O'KANE, JESSE CLYDE NICHOLS, III, STUART H. REESE, MICHAEL SORKIN, and JOSEPH S. STEINBERG,

*Defendants-Appellees*,

JEFFERIES FINANCIAL GROUP INC.,

*Nominal Defendant-Appellee*.[*]

---

| | |
|---|---|
| FOR PLAINTIFF-APPELLANT: | HUNG G. TA (JooYun Kim, *on the brief*), HGT Law, New York, NY; Peter Safirstein, Safirstein Law LLC, Ridgewood, NJ, *on the brief*. |
| FOR DEFENDANTS-APPELLEES: | GEORGE S. WANG, Simpson Thacher & Bartlett LLP, New York, NY. |

Appeal from the September 29, 2022, judgment of the United States District Court for the Southern District of New York (Paul A. Crotty, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Stanley Rubenstein ("Rubenstein") appeals from a judgment of the district court (Crotty, *J.*) dismissing his shareholder derivative action, brought on behalf of nominal defendant Jefferies Financial Group Inc. ("Jefferies"), against officers and directors (collectively, "Defendants") of Jefferies. Rubenstein alleges that Defendants

---

[*] The Clerk of Court is directed to amend the official caption as sets forth above.

2

violated Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") by issuing false and misleading proxy statements in connection with shareholder votes on the re-election of certain directors and the approval of executive compensation between 2017 and 2020. Specifically, Rubenstein contends that the proxy statements misrepresented the cost of executive and director compensation by underreporting the extent to which Defendants used Jefferies' corporate jets[1] for their own personal travel. Rubenstein's original complaint, which also included state law claims for breach of fiduciary duty, corporate waste, and unjust enrichment, was dismissed by the district court under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *See Rubenstein ex rel. Jefferies Fin. Grp. Inc. v. Adamany*, 532 F. Supp. 3d 154, 169 (S.D.N.Y. 2021). On appeal, we affirmed the district court's dismissal of the state law claims but vacated its dismissal of the Section 14(a) claim and remanded the case to the district court with instructions to reconsider "whether Rubenstein ha[d] adequately alleged loss causation." *Rubenstein ex rel. Jefferies Fin. Grp. Inc. v. Adamany*, No. 21-905-CV, 2021 WL 5782359, at *4 (2d Cir. Dec. 7, 2021) (summary order). In explaining our decision, we noted that "[w]e vacate the decision of the District Court not because we have determined that it is wrong—we express no view on that question—but because it was reached without consideration of controlling precedent." *Id.*

---

[1] Jefferies owns and operates three aircraft: two Gulfstream GV-SPs and one Bombardier Challenger. J. App'x at 92. The Gulfstreams can accommodate twenty passengers, the Bombardier can accommodate eight. *Id.*

On remand, Rubenstein filed an amended complaint ("Amended Complaint") alleging two new theories of loss causation. First, he argues that "inaccuracies and omissions" in the proxy materials concerning Defendants' personal use of the corporate jets deprived Jefferies shareholders of their right to cast informed advisory votes on executive compensation (known as a "say-on-pay" vote) pursuant to 15 U.S.C. § 78n-1.[2] J. App'x at 129. Second, he argues that the allegedly misleading proxy statements rendered Jefferies' director elections between 2017 and 2020 "tainted and defective." *Id.* at 130. The Amended Complaint seeks both injunctive relief and the disgorgement of compensation paid to the directors who prevailed in the "tainted" elections. *Id.* at 140.

By opinion and order entered September 29, 2022, and amended on October 5, 2022, the district court dismissed the Amended Complaint, concluding that Rubenstein had failed to plausibly allege loss causation. *See Rubenstein ex rel. Jefferies Fin. Grp. Inc. v. Adamany*, No. 20-CV-2775 (PAC), 2022 WL 6592503, at *3 (S.D.N.Y. Oct. 5, 2022) ("*Rubenstein II*"). Regarding the "say-on-pay" theory of loss causation, the district court concluded that it was foreclosed by the Supreme Court's decision in *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991), which held that loss causation in Section 14(a) cases cannot be based on "non-binding, 'cosmetic'" shareholder votes. *Rubenstein II*, 2022 WL

---

[2] 15 U.S.C. § 78n-1 provides that "[n]ot less frequently than once every 3 years, a proxy or consent or authorization for an annual or other meeting of the shareholders for which the proxy solicitation rules of the Commission require compensation disclosure shall include a separate resolution subject to shareholder vote to approve the compensation of executives."

6592503, at *3 (quoting *Va. Bankshares*, 501 U.S. at 1105–06). As for the "tainted election" theory of loss causation, the district court concluded that the theory was "moot" because the terms of the directors elected between 2017 and 2020 had expired. *See id.* at *4–5. The district court entered judgment in accordance with its decision on September 29, 2022, and Rubenstein timely appealed. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal, to which we refer only as necessary to explain our decision to affirm.

## DISCUSSION

"We review de novo the dismissal of a complaint under Rule 12(b)(6), accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011). To state a claim under Section 14(a), and Rule 14a-9 promulgated thereunder,[3] a plaintiff must plausibly allege that (1) a proxy statement contained a material "misstatement or omission," which (2) caused the plaintiff injury, and (3) "the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 384–85 (1970). The causation requirement "under federal securities laws is two-pronged: a plaintiff must allege both

---

[3] Rule 14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, prohibits proxy statements which are "false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 7 C.F.R. § 240.14a-9.

transaction causation, *i.e.*, that *but for* the fraudulent statement or omission, the plaintiff would not have entered into the transaction; and loss causation, *i.e.*, that the subject of the fraudulent statement or omission was the cause of the actual loss suffered." *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001); *see also Grace v. Rosenstock*, 228 F.3d 40, 47 (2d Cir. 2000) ("[B]oth loss causation and transaction causation must be proven in the context of a private action under § 14(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.").

On appeal, Rubenstein argues that the district court erred in concluding that the Amended Complaint fails to adequately allege loss causation. He contends that his "say-on-pay" theory is not foreclosed by *Virginia Bankshares* and that his "tainted election" theory is not moot because the Amended Complaint seeks prospective injunctive relief as to Jefferies' future proxy statements and the disgorgement of the director's prior compensation. We address each argument in turn.

I.  The "Say-on-Pay" Theory

We first conclude that the district court properly held that Rubenstein's "say-on-pay" theory is foreclosed by *Virginia Bankshares*. There, the Supreme Court held that materially misleading proxy statements issued to minority shareholders in connection with a non-binding vote failed to satisfy Section 14(a)'s causation requirement because the solicited votes were not necessary to approve the challenged corporate action. *See Va. Bankshares*, 501 U.S. at 1105–06. In arriving at this conclusion, the Supreme Court

6

expressly rejected the shareholders' argument that the misstatements were causally connected to their loss because the defendants "would have been unwilling to proceed with the merger without the approval manifested by the minority shareholders' proxies, which would not have been obtained without the solicitation's express misstatements and misleading omissions." *Id.* at 1100–01.

Rubenstein argues that *Virginia Bankshares* is inapposite because his "say-on-pay" theory challenges the loss of a statutory right to cast a particular vote, not the corporate action that the vote is intended to influence. In support of this claim, Rubenstein relies on our prior decision in *Wilson v. Great Am. Indus., Inc.*, 979 F.2d 924 (2d Cir. 1992). In *Wilson*, minority shareholders alleged that materially misleading proxy statements issued in connection with a proposed merger "deceptively procured [their] vote in favor of the merger," which, in turn, "deprived them of their state appraisal rights." *Id.* at 930. On appeal, we concluded that the minority shareholders adequately alleged loss causation because the state appraisal rights, if exercised, could have allowed the minority shareholders to "recoup a greater value" for their shares. *See id.* at 931 ("[L]oss causation may be established when a proxy statement prompts a shareholder to accept an unfair exchange ratio for his shares rather than recoup a greater value through a state appraisal.").

Here, the parties do not dispute that the "say-on-pay" votes were merely advisory and had no impact on the value or structure of the executive compensation packages.

7

Rubenstein does not argue that the allegedly misleading proxy statements deprived him of an economic benefit or prevented him from exercising a substantive state right similar to the appraisal rights at issue in *Wilson*. Instead, he simply argues that loss causation is satisfied because the non-binding "say-on-pay" vote is an important right in and of itself. This argument is insufficient to establish loss causation based on a non-binding, "cosmetic" shareholder vote that confers no substantive rights upon shareholders. *Va. Bankshares*, 501 U.S. at 1105; *see also Grace*, 228 F.3d at 48 (noting "that the principle announced in *Virginia Bankshares*" requires "a plaintiff [to] present nonspeculative evidence of loss causation and transaction causation" (citing *Wilson*, 979 F.2d at 931)); *Gray v. Wesco Aircraft Holdings, Inc.*, 847 F. App'x 35, 37 (2d Cir. 2021) (summary order) (holding Section 14(a) requires a showing that plaintiff "suffered a non-speculative economic loss"). Accordingly, we conclude that the district court correctly held that Rubenstein's "say-on-pay" theory fails to allege loss causation.[4]

## II. The "Tainted Elections" Theory

Turning to the "tainted elections" theory, we begin by noting that the district court

---

[4] We note that every federal court to address this issue has similarly concluded that Section 14(a) claims based on "say-on-pay" proxy materials fail to adequately allege causation. *See e.g.*, *McDowell v. Bracken*, 794 F. App'x 910, 917 (11th Cir. 2019) (summary order) ("[T]he [district] court did not err when it correctly concluded that proxies related to the election of directors and a non-binding 'say-on-pay' vote were too indirectly connected to any alleged losses to find loss causation . . . ."); *Yu Liang v. Berger*, No. 13-CV-12816-IT, 2015 WL 1014525, at *10 (D. Mass. Mar. 9, 2015) (holding that shareholder approval of executive compensation "on an advisory basis" failed to allege causation); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, No. 19-MD-2879, 2021 WL 2401641, at *17 (D. Md. June 11, 2021) (same).

erred in concluding that the theory is moot because the terms of the directors approved by the relevant proxy statements had expired. Subsection (g) of the Amended Complaint's "Prayer for Relief" requests "[i]njunctive relief requiring Defendants to disclose the correct 'aggregate incremental costs' of personal use of the Aircraft, including a portion of the fixed costs allocable to personal flights on the Aircraft, *and* requiring Defendants to correct all proxy statements for prior fiscal years to disclose these same costs . . . ." J. App'x at 140 (emphasis added). Drawing all reasonable inferences in Rubenstein's favor, we read subsection (g) as requesting both retrospective relief as to Jefferies' "prior" proxy statements and prospective injunctive relief as to its future proxy statements. We have previously recognized that a Section 14(a) claim challenging the election of corporate directors is not mooted by the end of the directors' terms "where [the] plaintiff seeks injunctive versus declaratory relief, or, in short, where [the] plaintiff 'seeks not only to eliminate the effect of past wrongdoing, but also to prevent its recurrence.'" *Sanders v. Thrall Car Mfg. Co.*, 582 F. Supp. 945, 955 (S.D.N.Y. 1983) (quoting *Seibert v. Sperry Rand Corp.*, 586 F.2d 949 (2d Cir. 1978)), *aff'd per curiam*, 730 F.2d 910 (2d Cir. 1984). Because the Amended Complaint appears to request injunctive relief as to Jefferies' future proxy statements, the theory of loss causation is not moot.

Despite this conclusion, we nevertheless affirm the district court's dismissal of the Amended Complaint because the "tainted election" theory fails to adequately allege loss causation. *See Clementine Co., LLC v. Adams*, 74 F.4th 77, 83–84 (2d Cir. 2023) ("We may

9

affirm the judgment of the district court on any ground that finds a basis in the record and where, as here, the district court dismisses a complaint for lack of standing, this Court can affirm on the alternative basis of failure to state a claim even if it finds Article III's standing requirements satisfied."). To plead loss causation, a plaintiff must allege "that the misrepresentations or omissions caused the economic harm" for which the plaintiff seeks relief. *Grace*, 228 F.3d at 47–48; *see also Wilson*, 979 F.2d at 931 ("We recognize that loss causation or economic harm to plaintiffs must be shown, as well as proof that the misrepresentations induced plaintiffs to engage in the subject transaction, that is, transaction causation."). Here, the "tainted election" theory fails because Rubenstein does not plausibly allege that the financial harm suffered by Jefferies was caused by the allegedly misleading proxy statements.

Rubenstein identifies two economic harms in the Amended Complaint: (1) "the payment of millions of dollars of improper and undisclosed perquisites (personal aircraft use) to the three [executive] [o]fficer Defendants," and (2) "the payment of director compensation to the [d]irector Defendants who were elected on the misleading proxy statements." Appellant's Reply Br. at 3. The Amended Complaint, however, does not plausibly allege that material misstatements concerning executive compensation proximately caused either harm. First, final approval of executive compensation, including the corporate policies governing the executives' use of the corporate aircraft, was left to the discretion of the elected directors and Jefferies' "Compensation

10

Committee." J. App'x at 47, 458. Because the shareholders did not directly approve of any aspect of executive compensation, Rubenstein cannot plausibly allege that the misleading proxy statements *caused* Jefferies to pay millions of dollars in undisclosed perquisites to its executives. *See Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005) ("[T]o establish loss causation, a plaintiff must allege . . . that the *subject* of the fraudulent statement or omission was the cause of the actual loss suffered . . . ." (internal quotation marks omitted)); *see also Edward J. Goodman Life Income Tr. v. Jabil Circuit, Inc.*, 594 F.3d 783, 797 (11th Cir. 2010) (explaining that the election of directors only indirectly caused the shareholders' loss where the subject matter of the lawsuit concerned the directors' actions after election).

Second, the Amended Complaint does not plausibly allege a causal nexus between the misleading proxy statements and the compensation received by Jefferies' directors. Rubenstein does not allege that the directors would *not* have been re-elected had the "aggregate internal costs" associated with private use of the jets been accurately disclosed prior to the election.[5] Instead, Rubenstein simply argues that the causation requirement is satisfied because the directors were re-elected "based on proxy statements issued in

---

[5] In his original complaint, Rubenstein did allege that "had the proxy statement accurately portrayed the cost of the abuse of the Flight Program, Jefferies's board would have lost reelection, which would have had the result of ending or reducing the practice of excessive personal travel on company airplanes." *Rubenstein*, 2021 WL 5782359, at *3; *see also* J. App'x at 68–69 (original complaint). In the Amended Complaint, Rubenstein's "primary theory [of] causation . . . is that Defendants' misleading proxy statements caused injury by leading to the defective elections for the Director Defendants." Appellant's Reply Br. at 2.

11

violation of Section 14(a)." J. App'x at 130. This conclusory allegation, while sufficient to establish transaction causation,[6] does not plausibly allege that material misstatements concerning the alleged misuse of the corporate jets *caused* the directors to earn "a lucrative compensation package comprising an equity grant in the amount of $190,000, retainer of $115,000 and additional retainers" of tens of thousands of dollars for serving on various committees. *Id.* at 130–31. Nor does it plausibly allege that the proxy statements caused the directors to earn millions of dollars in undisclosed perquisites. Accordingly, the "tainted election" theory fails to allege sufficient facts to plead loss causation. *See Lentell*, 396 F.3d at 174–75 (affirming dismissal for failure to allege loss causation where

---

[6] Rubenstein's "tainted election" theory conflates loss causation with transaction causation, which is not at issue in this case. In his Amended Complaint and principal brief, Rubenstein cites our prior decision in *Galef v. Alexander*, 615 F.2d 51, 56 (2d Cir. 1980), in support of the proposition that "loss causation is established when shareholders elect[] [directors] based on misleading proxy statements." Appellant's Br. at 15 n.5. The *Galef* decision, however, focuses exclusively on the issue of transaction causation. *See* 615 F.2d at 65 ("[T]here appears to be alleged a sufficient *causal link* between the claimed nondisclosures in the proxy statements and the elections which the statements sought to influence." (emphasis added) (citing *Weisberg v. Coastal States Gas Corp.*, 609 F.2d 650, 653–54 (2d Cir. 1979) (concluding "transaction causation requirement" satisfied where "the challenged transaction is the election of the directors[] and [there is] no doubt that the proxy solicitation itself . . . was an essential link in the accomplishment of that transaction . . . ." (internal quotation marks omitted)))); *see also Kuebler v. Vectren Corp.*, 13 F.4th 631, 645 (7th Cir. 2021) ("Plaintiffs argue that loss causation is alleged sufficiently where a materially deficient proxy statement was an essential link in the consummation of a transaction that the plaintiff alleges caused him financial harm. But that is the test for transaction causation."). Moreover, *Galef* predates our decision in *Grace*, which expressly held that a Section 14(a) claim must allege "both loss causation and transaction causation." 228 F.3d at 47. Rubenstein's assertion that "loss causation is sufficiently pled under Section 14(a) where a plaintiff alleges that misleading proxy statements were issued in connection with and led to the election of directors," Appellant's Br. at 13, is incorrect as a matter of law. *See Grace*, 228 F.3d at 47 (stating that under Section 14(a) a plaintiff must demonstrate both transaction causation and loss causation).

complaint offered no factual allegations supporting inference that subject of false statements caused decline in stock value); *see also Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 157–58 (2d Cir. 2007) (concluding plaintiffs failed to allege sufficient facts to show that defendant's misstatements were the proximate cause of plaintiffs' losses where non-party's misstatements could also have caused the loss and plaintiffs did not "allege[] facts that would allow a factfinder to ascribe some rough proportion of the whole loss to [defendant's] misstatements").

In sum, although we agree with Rubenstein that the district court erred in concluding that the "tainted election" theory is moot, we affirm the district court's judgment of dismissal because the "tainted election" theory fails to adequately allege loss causation.

\* \* \*

We have considered Rubenstein's remaining arguments and consider them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

13